UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-63164-BLOOM/VALLE

LANETTE BRYAN,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security Administration,

      Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court on Plaintiff Lanette Bryan's Motion for Summary Judgment (ECF No. 27) and Defendant Andrew M. Saul's, Commissioner of Social Security Administration, Motion for Summary Judgment and Response (ECF Nos. 28, 29) (the "Motions"). United States District Judge Beth Bloom has referred the Motions to the undersigned for a Report and Recommendation. *See* (ECF No. 19); *see also* 28 U.S.C. §636(c).

After due consideration of the record and the Motions, Plaintiff's Reply (ECF No. 30), and being otherwise fully advised in the matter, the undersigned recommends that Plaintiff's Motion for Summary Judgment (ECF No. 27) be **DENIED**, that Defendant's Motion for Summary Judgment (ECF No. 28) be **GRANTED**, and that the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

## I.    PROCEDURAL HISTORY

This suit involves an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI, respectively, of the Social Security Act,

42 U.S.C. § 401 *et seq.* (the "Act"). (R. 240-49).[1]  Plaintiff alleged a disability onset date of March 16, 2016. (R. 240, 244).  Plaintiff's claims were denied initially and again upon reconsideration. (R. 133-40, 145-56).  Thereafter, Plaintiff requested a hearing, which was held before ALJ Lisette Labrousse on January 9, 2019. (R. 45, 157-64).  Plaintiff, appearing with counsel, and a Vocational Expert both testified at the hearing. (R. 45-76).

On March 13, 2019, the ALJ issued a decision denying Plaintiff's applications and finding that Plaintiff was not disabled within the meaning of the Act. (R. 7-31).  Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.      STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154; *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance").  A court, however, "may not

---

[1] All references are to the record of the administrative proceeding filed as part of Defendant's Answer.  *See* (ECF No. 23).

decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citing *Bloodsworth*, 703 F.2d at 1239).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423 (standard for DIB), 1382 (standard for SSI). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)    Is the person presently unemployed?
(2)    Is the person's impairment severe?
(3)    Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4)    Is the person unable to perform his or her former occupation?
(5)    Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*,

800 F.2d 1026, 1030 (11th Cir. 1986).  A negative answer to any question, other than Step 3, leads to a determination of "not disabled."  *Id.*

Importantly, the burden of proof rests on the claimant through Step 4.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004).  At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled."  *Phillips*, 357 F.3d at 1238 (citations omitted).  If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5.  *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work."  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted).  The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform.  *Phillips*, 357 F.3d at 1239.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  *Id.*  Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.  *Id.*  The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by either: (i) applying the Medical Vocational Guidelines (contained within 20 C.F.R. part 404, subpart P, appendix 2); or (ii) using a Vocational Expert, who can opine

on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III.   THE RECORD

#### A.  Plaintiff's Testimony

Plaintiff, born on January 12, 1969, was 49 years old at the time of the administrative hearing.  (R. 51, 240, 244).  Plaintiff has a 10th grade education.  (R. 57).  Plaintiff testified that she worked at Kentucky Fried Chicken ("KFC") for 11 years, 7 hours a day, five days a week. (R. 54-56).  Plaintiff testified that she "used to do everything" at KFC, including helping to pack, washing dishes, and some occasional cooking; her primary duty was to prepare buckets of coleslaw.  (R. 54-55).  Plaintiff's hands began "cramping up."  (R. 55).  Thereafter, Plaintiff was hospitalized (for seizures), which led to her being fired.  *Id.*

As to her physical impairments, Plaintiff testified that she suffered from epileptic seizures, hearing loss, and arthritis.[2]  (R. 57-58, 66-67).  Plaintiff testified that she suffers a seizure approximately every six months, and that her last seizure was three months before the hearing.  (R. 57, 59, 64, 66).  Plaintiff believes that her seizures are caused by stress or excessive sun exposure, and that they affect her memory.  (R. 59, 61, 63, 65).  Plaintiff testified that she last drank alcohol before her last seizure three months ago, and that she had to stop drinking because it was not good for her.  (R. 58-59).

Regarding her hearing, Plaintiff testified that she has been hearing-impaired since birth. (R. 58).  Plaintiff also testified that she never used hearing aids and is able to read lips.  *Id.*  Plaintiff

---

[2] The record also reflects that Plaintiff suffers from Fahr's Disease, which the ALJ found to be a severe impairment.  (R. 13).  Although Plaintiff did not testify about Fahr's Disease, counsel made a brief statement to the ALJ regarding a CT scan of Plaintiff's brain that showed "dense bilateral basal ganglia and cerebral calcifications."  *See* (R. 62-63).

added that her hearing has worsened to the point where she cannot hear car noises outside.  (R.58).

Plaintiff claims that she cannot afford to buy a hearing aid.  (R. 70).

### B.  Reports of Social Security Administration

On July 22, 2016, Plaintiff was interviewed during an SSA Field Office visit.  (R. 256-58).

The interviewer noted that Plaintiff had no difficulty hearing, understanding, concentrating,

talking, or answering questions.  (R. 257).

In a subsequent Field Office visit on December 13, 2016, a different interviewer noted that

Plaintiff "needed assistance with hearing."  (R. 298).  The interviewer further noted that Plaintiff

brought someone with her to the interview to help her by repeating the interviewer's questions

directly into Plaintiff's ear.  *Id*.

Lastly, in a September 6, 2016 Adult Function Report, Plaintiff reported that her ability to

work was affected by the following: "seizures[,] tired from medications, drowsiness, shortness of

breath[,] serious arthritis on left side[,] hearing deficiency[,] need hearing aid[,] depression."

(R. 289).  While Plaintiff reported using a medically prescribed hearing aid and glasses, she also

stated that she did not currently have either.  (R. 295).  Plaintiff also reported that her hobbies

included watching TV and weekly telephone conversations with family.  (R. 293).  The Function

Report was completed for Plaintiff by Portia White, Plaintiff's cousin.  (R. 296); (ECF No. 27 at

19).  Ms. White also provided her own impression of Plaintiff's impairments, stating: "Lanette has

always been gainfully employed.  Since the seizures and her chronic arthritis, she hasn't' been able

to work.  Her work history when verified will show this statement is true.  Please help her."  *Id*.

Notably, Ms. White did not mention Plaintiff's hearing loss as one of the conditions adversely

affecting Plaintiff's ability to work.

### C. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing and categorized Plaintiff's past relevant work as a fast food worker (a light, unskilled job with an SVP of 2) and prep cook/cook helper (a medium job with an SVP of 2). (R. 71-72). The ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, and work experience with the limitations in Plaintiff's RFC could perform Plaintiff's past relevant work. (R. 72). Specifically, the ALJ's hypothetical individual would be able to work at the medium exertional level, but was limited to: (i) never climbing ladders, ropes or scaffolds; (ii) no exposure to unprotected heights, moving mechanical parts, or operating heavy machinery; (iii) never operating a motor vehicle; (iv) occasional exposure to extreme heat and sunlight; (v) moderate noise environments; (vi) performing simple and routine tasks; (vii) hearing simple oral instructions; (viii) communicating with others in close proximity or with face-to-face interaction; and (ix) no telephone communications. (R. 72). The VE testified that such an individual could not perform Plaintiff's past relevant work as a fast food worker, but could still work as a prep cook at the medium exertional level. *Id.*

Proceeding to Step 5, the ALJ asked the VE whether there were other jobs in the national economy that a hypothetical individual with Plaintiff's RFC could perform. (R. 73). The VE testified that such an individual could work as a hand packager and agricultural products packer, both medium jobs with an SVP of 2.[3] *Id.* Lastly, in response to the ALJ, the VE added that his testimony was consistent with Plaintiff's RFC and the DOT requirements for these jobs.[4] *Id.*

---

[3] Although the VE and ALJ use the term "agricultural *products* packer," the actual term in the DOT is "agricultural *produce* packer." *Compare, e.g.*, (R.23) (ALJ decision) *with* DOT 920.687-134, 1991 WL 687994. The undersigned will use both terms interchangeably.

[4] "DOT" refers to the *Dictionary of Occupational Titles*, published by the Department of Labor (4th ed., rev. 1991).

Thereafter, Plaintiff's counsel asked the VE whether the hypothetical individual could perform any of Plaintiff's past relevant work if she were further limited to occasionally lifting and carrying 10 pounds, frequently lifting/carrying less than 10 pounds, standing and walking for 2 hours and sitting for 6 hours in an 8-hour workday, and could only occasionally hear.  (R. 74).  In response, the VE testified that these additional limitations would preclude all past relevant work. *Id.*  The VE further testified that if the individual required extra assistance on a more than occasional basis (i.e., more than one-third of the workday) for "repetition, clarification, and possible showing the job work instructions through actions," then that would be "sheltered employment, which is not considered whole employment under the regulations."  (R. 75).

## IV.    THE ALJ'S DECISION

On March 13, 2019, after reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff was not disabled under the Act.  (R. 11, 25).

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 16, 2016, the alleged onset date.  (R. 13).

At Step 2, the ALJ found that Plaintiff's epilepsy, hearing loss not treated with cochlear implants, Fahr's Disease, and substance addiction disorders were severe impairments.[5]  *Id.*

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  (R. 14).

The ALJ next determined that Plaintiff had the RFC to perform medium work, with the following restrictions: (i) never climbing ladders, ropes, or scaffolds; (ii) no exposure to unprotected heights, moving mechanical parts, or operating heavy machinery; (iii) never operating

---

[5] Plaintiff does not challenge the ALJ's finding that her affective disorder, hypertension, arthritis, kidney disease, thyroid disease, left ptosis, hypocalcemia, hypomagnesemia, hypokalemia, and transaminitis were not severe impairments.  (R. 13-14); *see generally* (ECF No. 27, 30).

a motor vehicle; (iv) occasional exposure to extreme heat or excessive sunlight; (v) moderate noise environment; (vi) performing simple and routine tasks; (vii) hearing simple oral instructions; and (viii) communicating with others in close proximity or with face-to-face interaction.  (R. 15).

At Step 4, the ALJ found that Plaintiff could perform her past relevant work as a prep cook. (R. 22-23).  Despite having found past relevant work, the ALJ proceeded to Step 5.  (R. 23).

At Step 5, based on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform other jobs in the national economy, such as hand packager and agricultural products packer, both medium unskilled jobs with an SVP of 2.   (R. 23-24).

Lastly, citing to SSR 00-4p, the ALJ noted that the "[VE's] testimony is consistent with the information contained in the [DOT] and/or is based on his expertise and can be relied upon in making a decision in this case."  (R. 24).

## V.   <u>DISCUSSION</u>

Plaintiff's Motion raises three primary arguments: (i) whether the ALJ erred in failing to address an apparent conflict between Plaintiff's RFC and the VE's testimony with the DOT requirements for the jobs of prep cook (Step 4) and hand packager and agricultural products packer (Step 5); (ii) whether the ALJ's RFC properly accounted for Plaintiff's hearing loss and is supported by substantial evidence; and (iii) whether the ALJ erred in finding that Plaintiff's

hearing impairment did not meet or equal Listing 2.10.[6]  *See* (ECF No. 27 at 3).  For the reasons

discussed below, the undersigned recommends that the ALJ's Decision be affirmed.

### A.    No Apparent Conflict Exists Between the RFC/VE Testimony and the DOT

*1.  Applicable Law*

In SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), the SSA made clear that an ALJ must

resolve conflicts between the VE testimony and the DOT.  In relevant part, SSR 00-4p provides:

> Occupational evidence provided by a VE or VS generally should be consistent with
> the occupational information supplied by the DOT.  When there is an apparent
> unresolved conflict between VE or VS evidence and the DOT, the adjudicator must
> elicit a reasonable explanation for the conflict before relying on the VE or VS
> evidence to support a determination or decision about whether the claimant is
> disabled.  At the hearings level, as part of the adjudicator's duty to fully develop
> the record, the adjudicator will inquire, on the record, as to whether or not there is
> such consistency.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is
> a conflict.  The adjudicator must resolve the conflict by determining if the
> explanation given by the VE or VS is reasonable and provides a basis for relying
> on the VE or VS testimony rather than on the DOT information.

2000 WL 1898704, at *2.

In 2018, the Eleventh Circuit expanded on SSR 00-4p.  *See Washington v. Comm'r of Soc.*

*Sec.*, 906 F.3d 1353 (11th Cir. 2018).  In *Washington,* the Court held that an ALJ has an affirmative

duty under SSR 00-04p "to identify, explain, and resolve" apparent conflicts between DOT data

---

[6] Plaintiff raises four new arguments in her Reply: (i) that the ALJ's hypothetical to the VE failed
to adequately address her epilepsy and Fahr's disease (ECF No. 30 at 1-3); (ii) that "the ALJ erred
by stopping the sequential evaluation at step four and finding that Plaintiff could perform her past
work as Prep Cook but could not perform past work as a Fast Food Worker." (*Id.* at 4-5); (iii) that
the ALJ's finding that Plaintiff can perform past work as a prep cook is "internally inconsistent"
with the ALJ's oral findings during the administrative hearing (*Id.* at 5); and (iv) that the ALJ's
statements at the hearing misled Plaintiff to believing "that the ALJ would find the Plaintiff unable
to perform her past work at step flour of the sequential evaluation." (*Id.*).  Arguments raised for
the first time in a reply are deemed waived and need not be considered.  *Infante v. Berryhill*, No.
15-CIV-61252, 2017 WL 1062440, at *8 (S.D. Fla. Mar. 21, 2017*); see also In re Egidi*, 571 F.3d
1156, 1163 (11th Cir. 2009).  Moreover, these arguments are unsupported by the record.

and VE testimony. *Id*. at 1356. The ALJ's "duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." *Id.* at 1362. Rather, "if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion." *Id*. at 1366.

An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE. It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. At a minimum, a conflict is apparent if a "reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*. Here, a reasonable comparison of the DOT requirements for two of the three jobs against Plaintiff's RFC and the VE testimony reveals no inconsistency.

### 2. No Conflict Exists between the RFC/VE Testimony and the DOT Descriptions

Plaintiff generally argues that the ALJ erred in failing to identify and resolve an apparent conflict between Plaintiff's RFC/VE's testimony on the one hand, and the DOT requirements for the jobs of prep cook, hand packager, and agricultural products packer on the other hand. (ECF No. 27 at 7-14). Plaintiff claims four unaddressed conflicts: (i) a conflict between the RFC's limitation to "hearing simple oral instructions and performing simple and routine tasks" with the DOT's requirement of a "Reasoning Skill Level of 2" for the three jobs, which requires understanding and carrying out "detailed" instructions (*Id*. at 7-11); (ii) a conflict between the RFC's limitation to "occasional exposure to extreme heat" with the DOT's requirement for the prep cook (Step 4) and hand packager jobs (Step 5) of "frequent" exposure to extreme heat (*Id*. at 12-13); (iii) a conflict between the RFC's limitation to "moderate noise" with the DOT's

requirement for the hand packager job (Step 5), requiring exposure to "loud" work environments (*Id*. at 11); and (iv) a conflict between the RFC's limitation to "no exposure to moving mechanical parts or operating heavy machinery" with the DOT's requirement for the agricultural products packer job (Step 5), requiring exposure to moving mechanical parts and operating heavy machinery (*Id*. at 13-14).

For the reasons discussed below, the undersigned finds that no apparent conflicts exist between Plaintiff's RFC/VE testimony and the DOT job requirement for Plaintiff's past relevant work as a prep cook (at Step 4) or the alternative job of agricultural products packer (at Step 5). Having found no conflict between Plaintiff's past relevant work as a prep cook or the alternate job as an agricultural products packer, the undersigned need not address whether a conflict exists between the RFC/VE testimony and the hand packager job (another alternate job at Step 5).

### a. Limitation to Hearing Simple Instructions v. RSL 2 (Prep Cook and Agricultural Products Packer Jobs)

Reasoning skill levels ("RSL") measure a claimant's ability to engage in certain basic functions related to *education* and require the claimant to be able to carry out instructions and perform *mental* tasks. DOT, App. C, 1991 WL 688702, at *3-5 (4th ed. 1991) (emphasis added); *Nadile v. Saul*, No. 8:19-CV-9-T-CPT, 2020 WL 143701, at *4 (M.D. Fla. Mar. 24, 2020). Reasoning levels range from 1 to 6, with one being the lowest. *Id*. Pursuant to the DOT, an RSL of 2 requires the application of "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and the ability to "[d]eal with problems involving few concrete variables." *Id*. at *5; *see also* DOT 317.687-010, 1991 WL 672752 (prep cook); 920.587-018, 1991 WL 687916 (hand packager); and 920.687-134 1991 WL 687994 (agricultural produce packer). Plaintiff argues that the RFC's restriction to "hearing simple instructions" creates at least

an apparent conflict with jobs that require an ability to understand and carry out "detailed" instructions.  (ECF No. 27 at 7).

According to Defendant, Plaintiff's argument "overlooks the fact that, although the ALJ limited Plaintiff to 'simple and routine tasks' and 'simple oral instructions,' the ALJ made clear the[se] restrictions arose from *hearing* issues, rather than any deficits in Plaintiff's *mental* abilities."  (ECF No. 28 at 19).  The undersigned agrees.

In explaining the rationale for limiting Plaintiff to "hearing simple instructions," the ALJ clarified:

> Although there are no opinions finding that the claimant has a severe *mental* impairment limiting her abilities to understand, remember and apply instructions, interact with others, adapt or maintain concentration, persistence and pace, it is reasonable to relegate the claimant to simple and routine tasks *because of her hearing issues.  Simple and routine tasks will include oral instructions that would be simple and more easily understood (audibly and in reading lips) given the claimant's hearing limitations*.

(R. 22) (emphasis added).

Importantly, Plaintiff does not challenge the ALJ's determination that her affective disorder is not severe.  *See* n. 5, *supra*.  To be clear, the ALJ found that Plaintiff's affective disorder did not result in any *mental* restrictions affecting her ability to understand and carry out instructions, whether simple or detailed.  Accordingly, the DOT's reasoning levels are not implicated here.  As the ALJ recognized and explained, Plaintiff's limitation to simple, routine tasks and hearing simple oral instructions was based on a *physical hearing* impairment, not a *mental* impairment.  The DOT's reasoning levels, however, apply to a claimant's *educational* and *mental* ability to understand and perform certain instructions and tasks.  Thus, the cases cited by Plaintiff are inapposite.  *See* (ECF No. 27 at 8-11) (listing cases, including the undersigned's opinion in *Porter v. Berryhill,* No. 18-CV-60210, 2020 WL 475690, at *3 (S.D. Fla. Jan. 13, 2020),

*report and recommendation adopted*, No. 18-CV-60210, 2010 WL 473131 (S.D. Fla. Jan. 29, 2020), finding an apparent conflict between an RFC limiting plaintiff to understanding and following simple instructions based on *mental limitations* with jobs requiring an RSL of 2 or higher).

### b. *Occasional Exposure to Extreme Heat vs. DOT (Prep Cook Job)*

Plaintiff argues that an apparent conflict exists between Plaintiff's RFC limitation to "occasional exposure" to extreme heat and the DOT description for prep cook, which requires "frequent" exposure to extreme heat. (ECF No. 27 at 12-13). Plaintiff's argument fails.

The DOT description for prep cook defines extreme heat as existing "occasionally," which is further defined as " . . . up to 1/3 of the time." *See* DOT 317.687-010, 1991 WL 672752, at *5. Accordingly, no conflict exists between the DOT classification for prep cook and the RFC/VE testimony limiting Plaintiff to occasional exposure to extreme heat.[7]  Thus, SSR 00-4p and *Washington* are not implicated and the ALJ did not err in finding that Plaintiff could perform her past relevant work as a prep cook.

---

[7] The DOT further describes the prep cook/cook helper job as requiring: exposure to moderate noise level; no exposure to moving mechanical parts; and only occasional hearing (further defined as up to 1/3 of the time), all of which are consistent with Plaintiff's RFC and the VE's testimony. *Compare* DOT 317.687-010, 1991 WL 672752, at *5 *with* (R. 72-73).  Accordingly, *Washington* is not implicated.  Plaintiff argues that "the nature of work" for short order cooks involves "boiling, frying, heating and roasting."  (ECF No. 27 at 13).  Plaintiff, however, did not work as a short order cook.  Rather, she testified that her duties consisted of packing, washing dishes, setting up the lobby and the mashed potatoes, preparing coleslaw, and sometimes cooking for the buffet. (R. 53-55).  Moreover, the Court's independent research reveals that Plaintiff's language regarding "nature of work" for short-order cook appears in the *Occupational Outlook Handbook*, published by the Department of Labor, and not in the DOT.  Here, it is the DOT that is relevant to the *Washington* analysis.  Plaintiff's incorrect citations undermine her argument regarding this job.

*c.  No Exposure to Moving Mechanical Parts or Heavy Machinery vs. DOT*
*(Job as Agricultural Produce Packer)*

Alternatively, the ALJ proceeded to Step 5 and found that Plaintiff can also work as an agricultural products packer.  (R. 23-24).  Plaintiff argues that the ALJ's RFC and the VE testimony conflict with the DOT requirements for this job, which according to Plaintiff requires exposure to moving mechanical parts and operating heavy machinery.  (ECF No. 27 at 14).  As with the prep cook job, Plaintiff inaccurately cites to the DOT in describing the "nature of work" for an agricultural produce packer.  *See* (ECF No. 27 at 13-14).  The Court's independent research, however, reveals that the cited language regarding "nature of work" appears in the *Occupational Outlook Handbook*, published by the Department of Labor, and not in the DOT.  Again, it is the DOT that is relevant to the *Washington* analysis.

Here, the undersigned has reviewed the DOT requirements for the  agricultural produce packer job and finds no apparent conflict between Plaintiff's RFC on the one hand, and the VE testimony and DOT requirements on the other.  Initially, for the reasons discussed above, *see* Section A.2.a, there is no apparent conflict between this job and an RSL of 2.  Similarly, there is no apparent conflict between the RFC/VE's limitation to no exposure to moving mechanical parts or operating heavy machinery with the DOT.  Rather, the DOT specifies that moving mechanical parts are "Not Present" for the job of agricultural produce packer.  *See* DOT § 920.687-134, 1991 WL 687994.

**B.  The ALJ's RFC is Supported by Substantial Evidence**

Plaintiff raises three challenges to the ALJ's RFC.  First, Plaintiff argues that the RFC failed to properly address the severity of her hearing loss.  (ECF No. 27 at 15-20).  Next, Plaintiff argues that the ALJ failed to fully develop the record by not ordering an updated hearing test, and relying instead on a hearing test that predated her alleged onset date.  *Id.* at 20-22.  Lastly, Plaintiff

15

argues that the ALJ erred in finding that Plaintiff's hearing loss resulted in only "mild" limitations in: (i) understanding, remembering, and applying information; and (ii) maintaining concentration, persistence, or pace. *Id.* at 24-27. For the reasons discussed below, the undersigned finds that the ALJ's RFC determination is supported by substantial evidence and that the ALJ applied the proper legal standards in making her determination.

### 1. The RFC Properly Accounts for Plaintiff's Severe Hearing Loss

Plaintiff argues that the "ALJ formulated a[n] RFC that failed to adequately include all of Plaintiff's functional limitations caused by severe hearing loss in both ears." *Id.* at 15. More specifically, Plaintiff argues that the ALJ did not sufficiently consider a January 2012 hearing test that showed Plaintiff had "severe sensorineural hearing loss in both ears." *Id.* at 15-16; *see also* (R. 343). Plaintiff also argues that the ALJ did not consider "Plaintiff's obvious hearing difficulties" when she testified at the administrative hearing and "selectively" ignored the December 2016 Field Office interview indicating that Plaintiff had hearing difficulties and brought a friend to help her by repeating the interviewer's questions directly into Plaintiff's ear. *Id.* at 16-19.

A claimant's RFC is the most she can still do despite her limitations and is based on all the relevant evidence in the case record, including medical history, the effects of treatment, daily activities, medical opinions, and any medical source statements. 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184, at *5 (Jul. 2, 1996). Determining a claimant's RFC is an issue reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c); *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016). Here, substantial evidence supports the ALJ's RFC assessment of Plaintiff's hearing-related limitations. The RFC appropriately limited Plaintiff to moderate noise environments, hearing simple oral

instructions, and communicating with others in close proximity or with face-to-face interaction.

(R. 15).  The ALJ further explained:

> Although there are no opinions finding that the claimant has a severe mental impairment limiting her abilities to understand, remember and apply instructions, interact with others, adapt or maintain concentration, persistence and pace, it is reasonable to relegate the claimant to simple and routine tasks *because of her hearing issues.  Simple and routine tasks will include oral instructions that would be simple and more easily understood (audibly and in reading lips) given the claimant's hearing limitations.*

(R. 22) (emphasis added).

As set forth in the ALJ's Decision, substantial evidence supports the ALJ's RFC assessment, with no greater restrictions.[8]  For example, the ALJ noted that there are no treating or examining medical source opinions indicating that Plaintiff is disabled or that would lead to greater limitations than determined in the ALJ's Decision.  (R. 17).  The ALJ also noted the absence of any findings to support the intensity and persistence of Plaintiff's subjective symptoms.  *Id.*  While acknowledging that the January 2012 hearing test showed severe bilateral sensorineural hearing loss, the ALJ also noted that a December 2013 disability examination report indicated that Plaintiff "responds and reacts appropriately to questions and commands" and could "hear sufficiently to respond appropriately during normal conversational speech."[9]  (R. 19, 21); *see also* (R. 342-45, 348).  The ALJ's Decision also referenced the July 2016 Field Office interview report that Plaintiff had no apparent difficulty hearing, understanding, talking, or answering questions during the interview.  (R. 16); *see also* (R. 257).  In addition, the ALJ cited to a June 2016 ambulance crew's observation that Plaintiff communicated without difficulty and a November 2016 Broward Health

---

[8] Indeed, Plaintiff does not identify what greater limitations the ALJ should have incorporated or cite to any medical evidence supporting greater limitations.

[9] During the examination, Plaintiff reported that she was born with bilateral hearing deficits and wore hearing aids for many years.  In addition, Plaintiff told the doctor that she had lost her hearing aids the previous month.  (R. 347).

Medical Center treatment note that Plaintiff was able to follow simple commands easily.  (R. 18, 19); *see also* (R. 401, 422).  The ALJ also referred to August-September 2017 records from Memorial Hospital, noting that Plaintiff was hearing-impaired, but wore a hearing aid in her right ear and had normal speech/language.  (R. 19); *see also* (R. 585) (noting that Plaintiff was "hard of hearing"); (R. 647) (noting that Plaintiff's right hearing aid was found on her bed); (R. 795, 805) (noting that Plaintiff had impaired hearing).  The ALJ also cited to October 2018 Broward Health records reflecting that Plaintiff was "very hard of hearing" but could understand instructions normally and had normal speech  (R. 19); *see also* (R. 462, 473).  Records from Homeless Outreach for August 2018 reflect that Plaintiff was wearing hearing aids.  (R. 505).  Lastly, the undersigned notes and the record confirms that Plaintiff's hearing loss existed since birth, yet Plaintiff was able to work for years at KFC, watch TV, and speak on the telephone with family once or twice each week.  *See* (R. 293) (September 2016 Adult Function Report reporting that Plaintiff's hobbies included watching TV and talking to family on the phone).  Furthermore, the record is full of Plaintiff's conflicting reports about her use of hearing aids.[10]

Despite the substantial evidence discussed in the ALJ's Decision, Plaintiff argues that the ALJ erred in not specifically mentioning the December 2016 Field Office interview, in which the interviewer noted that Plaintiff "needed assistance with hearing, [so] someone came with her to ask [the questions] in her ear . . . and then replied to me."  (ECF No. 27 at 19); *see also* (R. 298).

---

[10] For example, contrary to Plaintiff's testimony that she never owned or used hearing aids because she could not afford them, *see* (R. 58), treatment records contain numerous reports of Plaintiff's use of hearing aids.  *See, e.g.,* (R. 347) (December 2013 disability examination report reflecting that Plaintiff wore hearing aids, but claimed to have lost them the month before the exam); (R. 543) (October 2016 treatment note from Homeless Outreach that Plaintiff wore bilateral hearing aids); (R. 647) (August-September 2017 Memorial Regional hospital note that Plaintiff's right ear hearing aid was found in her bed); (R. 505) (August 2018 treatment note from Homeless Outreach that Plaintiff's hearing aids were in place).

According to Plaintiff, the ALJ "selectively omitted" any reference to this interview from her Decision.  (ECF No. 27 at 19, 21, 25).  Plaintiff's argument is unpersuasive for several reasons.  First, the ALJ's Decision, as outlined above, reflects the ALJ's thoughtful consideration of Plaintiff's hearing loss and the full medical record.  After reviewing the evidence, the ALJ limited Plaintiff to moderate noise levels, simple and routine tasks, hearing simple oral instructions, and communicating with others in close proximity or with face-to-face interaction.  (R. 15).  In doing so, the ALJ discussed evidence both favorable and unfavorable to Plaintiff.  *See generally* (R. 14-22).

Second, the ALJ is not required to discuss every piece of evidence in the record, as long as the ALJ's Decision is not a broad rejection of the claimant's condition as a whole.  *Packer v. Comm'r, Soc. Sec. Admin.,* 542 F. App'x 890, 891-92 (11th Cir. 2013) (citation omitted); *Herron v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 781, 783 (11th Cir. 2016).  Rather, the ALJ must provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Packer,* 542 F. App'x at 892.  As detailed above, the ALJ provided sufficient reasoning for the undersigned to conclude that the ALJ properly considered Plaintiff's medical condition in assessing Plaintiff's RFC.  *See also Lewen v. Comm'r of Soc. Sec.,* 605 F. App'x 967, 969 (11th Cir. 2015) ("[W]hile the ALJ is required to state the weight afforded to each medical opinion . . . the ALJ is not required to discuss every piece of evidence") (citing *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005)); *Cooper v. Comm'r of Soc. Sec*., 521 F. App'x 803, 808-09 (11th Cir. 2013) ("Despite [the claimant's] assertions to the contrary, the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits.") (citations omitted).

Lastly, the December 2016 Field Office interview report is, at best, only cumulative of other evidence in the record establishing that Plaintiff suffered from severe bilateral hearing loss. There is no dispute that Plaintiff was diagnosed with severe bilateral sensorineural hearing loss. Rather, the issue is whether the December 2016 interview report contains any additional functional limitations resulting from Plaintiff's hearing loss. It does not. Plaintiff's diagnosis of severe hearing loss, without more, does not establish the severity of her impairment or any resulting work-related limitations.[11] *See, e.g.*, *Wood v. Astrue*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005)), *report and recommendation adopted*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834132 (M.D. Fla. Mar. 13, 2012) (concluding diagnosis alone did not amount to functional limitations that would have changed the outcome of the ALJ's decision).

### 2. *The ALJ Satisfied Her Duty to Develop the Record*

In January 2012, Plaintiff underwent a hearing test. (R. 342-45). During the examination, Plaintiff reported a history of bilateral hearing loss, with no hearing aids. (R. 342). The audiogram showed severe sensorineural hearing loss in both ears, and the examining doctor recommended that Plaintiff use hearing aids "full time." (R. 343). The ALJ relied on this audiogram, along with other evidence in the record, to assess Plaintiff's RFC. Plaintiff argues that the ALJ "erred by not

---

[11] Plaintiff summarily argues that her subjective reports of hearing loss and her difficulty hearing during parts of the administrative hearing support more restrictive RFC limitations than imposed by the ALJ. (ECF No. 27 at 16-19, 21). To the extent this argument could be construed as Plaintiff's attempt to challenge the ALJ's subjective symptom determination, *see* (R. 17), the argument is cursory and should be deemed waived. *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (arguments raised "in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (citation omitted).

ordering an updated audiogram examination . . . to obtain a current reflection of the Plaintiff's worsening hearing loss."[12]  (ECF No. 27 at 21-22).

Because an administrative hearing is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  This obligation exists even when a claimant is represented by counsel and requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* (citations and quotations omitted); *Thomas v. Comm'r of Soc. Sec.*, No. 20-11557, 2020 WL 7703135, at *2 (11th Cir. Dec. 29, 2020); *Moye v. Saul,* No. 19-CV-60332, 2020 WL 1433280, at *8 (S.D. Fla. Mar. 24, 2020) (citing *Cowart*, 662 F.2d at 735).  Further, the ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735; *cf. Howell v. Saul*, No. 18-81494-CIV, 2020 WL 869733, at *6 (S.D. Fla. Feb. 21, 2020) (remanding where claimant was prejudiced by the ALJ's failure to further develop the record with psychiatric evaluation).  Nonetheless, a claimant must show prejudice before a court can find that her due process rights have been violated to such a degree that the case must be remanded to the Commissioner for further development of the record.  *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (citations omitted); *see also Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).  As explained below, there is no evidentiary gap or resulting prejudice here.

First, at no time during the hearing, did Plaintiff complain of any evidentiary gaps or missing medical evidence.  Rather,  the ALJ asked Plaintiff's counsel, "Have you reviewed the

---

[12] The undersigned notes that this argument (that the ALJ erred by relying on the January 2012 audiogram) contradicts Plaintiff's other arguments that the audiogram: (i) supports a more restrictive RFC, *see* Section B.1 *supra*; (ii) supports a finding of "marked" or "extreme" limitations in two of the Paragraph B criteria, *see* Section B.3, *infra*; and (iii) supports a finding that Plaintiff met Listing 2.10, *see* Section C, *infra*.

file?" (R. 50).   Counsel replied, "I have, yes." *Id.*   The ALJ then asked, "And is the record complete?" *Id*.   Counsel again responded, "Yes." (R. 50).   These statements undercut Plaintiff's argument that the ALJ failed to fully develop the record.   Second, Plaintiff provides no medical support for her argument that an updated audiogram would have resulted in more severe limitations than the ALJ imposed.   Although Plaintiff alleges "worsening hearing loss," she cites no evidence (other than her subjective statements) to support this claim.   (ECF No. 27 at 21-22).   Mere speculation that further development of the record might produce evidence favorable to Plaintiff is not enough.   *See, e.g., Pennington v. Comm'r of Soc. Sec.,* 652 F. App'x 862, 871-72 (11th Cir. 2016) (rejecting claim that ALJ should have inquired about gap in medical history where claimant "[did] not assert any medical records actually exist for the [missing] period . . . or explain how such records would be relevant to support his alleged onset date"); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a).   Ultimately, it is Plaintiff who bears the burden of proving that she is disabled and is responsible for producing evidence in support of her claim.   *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. §§ 404.1512(a)(1); 416.912(a)(1) (a claimant must furnish medical and other evidence that the Commissioner can use to reach conclusions about her medical impairment(s)); 20 C.F.R. §§ 404.1512(a)(2); 416.912(a)(2) (a claimant must provide medical evidence showing that she has an impairment(s) and how severe they are).

### 3. The ALJ Properly Assessed the Paragraph B Criteria for Mental Impairments

At Steps 2 and 3, the ALJ determined that Plaintiff had "mild" restrictions in the four broad areas of mental functioning set forth in the disability regulations for evaluating mental disorders and in the Listings.  (R. 13).  These four areas of mental functioning are known as the "Paragraph B" criteria.  *Id.*  Plaintiff generally argues that the ALJ erred in finding that Plaintiff had only

"mild" limitations in two of these areas:  (i) understanding, remembering, or applying information (ECF No. 27 at 24-25); and (ii) maintaining concentration, persistence, or pace.[13]  *Id.* at 25-27.

Plaintiff's challenge to the ALJ's Paragraph B findings is misplaced.  First, Plaintiff does not challenge the ALJ's Step 2 finding that her affective disorder is a non-severe impairment. (R. 13).  Second, the Paragraph B criteria are used to evaluate the severity of a claimant's *mental—not physical—*impairments.  *See* 20 C.F.R. §§ 404.1520a(a)(2), 416.920a(a)(2) (noting Paragraph B criteria are used to "[c]onsider and evaluate functional consequences of the mental disorder(s) relevant to your ability to work[.]") (emphasis added).  Here, however, Plaintiff's challenge to the ALJ's Paragraph B findings is based on her *hearing limitations* and not on any *mental limitations* caused by her non-severe affective disorder.  *See generally,* (ECF No. 27 at 24-27).  Simply put, the Paragraph B criteria describe limitations resulting from mental impairments, not from physical impairments, such as Plaintiff's hearing loss.

In any event, substantial evidence supports the ALJ's Paragraph B findings that Plaintiff had only "mild" limitations in these two areas.  *See* (R. 13-14).  The ALJ's Decision cites to: (i) an October 2016 mental status examination report reflecting that Plaintiff was able to apply herself to all tasks during the evaluation (R. 13, 395); (ii) the July 2016 a Field Office interview report that Plaintiff did not appear to have any difficulty understanding, concentrating, talking, or answering during the interview  (R. 13-14, 257); and (iii) November 2016 and January 2017 State Agency psychological consultant opinions that Plaintiff had "mild" limitations in both challenged

---

[13] In this context, Plaintiff again argues that the ALJ "selectively" relied on the July 2016 Field Office interview while "selectively omit[ing]" the December 13, 2016 interview. (ECF No. 27 at 24).  Plaintiff also argues that her hearing difficulties during the administrative hearing, coupled with the results of the January 2012 audiogram, should have resulted in findings of "marked" or "extreme" limitations in these two areas of mental functioning.  *Id.* at 25. The undersigned has already addressed and rejected these arguments.  *See* Section B.1 and n.12, *supra.*

areas.[14]  (R. 13-14); *see* (R. 84, 97, 111, 126) (State Agency opinions at initial and reconsideration

levels); *see also* (R. 393) (mental status examination report that Plaintiff could apply herself to all

tasks during the evaluation).  This Court's review of the ALJ's Decision is limited to whether there

is substantial evidence in the record to support the ALJ's findings and whether the ALJ applied

the correct legal standards.  *Biestek,* 139 S. Ct. at 1154; *Carson,* 440 F. App'x at 864; *see also* 42

U.S.C. § 405(g).  Here, the undersigned finds no error in the ALJ's assessment of the Paragraph B

criteria.

In sum, for the reasons discussed above, the undersigned finds that the ALJ's RFC

determination was supported by substantial evidence and that the ALJ applied the correct legal

standards.

## C.    THE  ALJ PROPERLY CONSIDERED LISTING 2.10

Lastly, Plaintiff argues that the "ALJ did not appropriately consider or evaluate [L]isting

§2.10."  (ECF No. 27 at 22).  Listing 2.10, entitled "Hearing Loss Not Treated with Cochlear

Implantation," provides:

> A.  An average air conduction hearing threshold of 90 decibels or greater in the
> better ear and an average bone conduction hearing threshold of 60 decibels or
> greater in the better ear (see 2.00B2c).
> OR
> B.  A word recognition score of 40 percent or less in the better ear determined using
> a standardized list of phonetically balanced monosyllabic words (see 2.00B2e).

20 C.F.R. Pt 404, Subpt. P, Appendix 1 § 2.10.

---

[14] Plaintiff does not challenge the opinions of the State Agency consultants.  Moreover, State
agency medical and psychological consultants are highly qualified specialists who are also experts
in the Social Security disability programs, and their opinions may be entitled to great weight if the
evidence supports them.  *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1); SSR 17-2p, 2017 WL
3928306, at *3 (Mar. 27, 2017); *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th
Cir. 2012).

In evaluating whether Plaintiff's hearing impairment met the criteria for Listing 2.10, the ALJ found that the record "does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal a listed impairment." (R. 14). The ALJ explained:

> [Plaintiff's] impairment does not meet the strict criteria for the listing because, despite her hearing loss, the claimant could hear normal conversational speech and responded appropriately to verbal commands during the consultative examination. (Exh. 2F at 2). At the August 17, 2018 visit with her primary care provider, she wore bilateral hearing aids and her speech was clear and coherent. (Exh. 8F at 13).

(R. 15).

According to Plaintiff, the ALJ erred by: (i) relying on a December 2013 consultative examination (Exh. 2F), which predated Plaintiff's alleged onset date (ECF No. 27 at 22); (ii) relying on an August 2018 treatment note that reflected Plaintiff's speech was clear and coherent, but said nothing about Plaintiff's hearing (*Id.* at 23); and (iii) not considering the January 2012 audiogram diagnoses and Plaintiff's subjective symptoms. (*Id.* at 24). Plaintiff's challenge to the ALJ's reference to these records ignores the substantial evidence that supports the ALJ's Decision.[15] Thus, Plaintiff's argument that she met Listing 2.10 is without merit.

---

[15] Although Plaintiff claims that the August 2018 treatment note, *see* (R. 503-06), does not mention Plaintiff's hearing loss, *see* (ECF No. 27 at 22), the note reflects that Plaintiff wore a hearing aid in both ears. (R. 505). As well, Plaintiff's challenge to the 2013 consultative examination, *see* (R. 347-52), is unconvincing. During the examination, Plaintiff reported bilateral hearing deficits since birth. *Id.* at 347. Plaintiff also reported that she had worn bilateral hearing aids for many years, but lost the hearing aid "last month." *Id.* The consultative examiner noted that "claimant responds and reacts appropriately to questions and commands," and "is able to hear sufficiently to respond appropriately during normal conversational speech, and responds appropriately to verbal commands." *Id.* at 348. Plaintiff was diagnosed with bilateral hearing loss, left eye lid ptosis, and arthritis in her lower extremities, but no limitations were noted. *Id.* at 349. Moreover, even if the ALJ erred in considering this pre-onset date evaluation, such error would be harmless, as the evaluation is cumulative of other information in the record. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (noting that ALJ's error is harmless "if it did not affect the

First, Plaintiff ignores the ALJ's fulsome review of the medical record, evident throughout the ALJ's Decision. *See* (R. 15-22). Moreover, the ALJ does not have to "mechanically recite the evidence leading to her determination." *Hutchison v. Bowen,* 787 F.2d 1461, 1463 (11th Cir. 1986). Here, the ALJ explained that the "record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required" to meet this Listing. (R. 14). Furthermore, the ALJ stated that she "also considered all the evidence of record in finding that the claimant's impairments, both alone and in conjunction, do not meet or medically equal any listing." *Id.* at 14-15.

Second, it is Plaintiff who bears the burden of demonstrating that her impairment meets or equals a listed impairment. *Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir. 1991); *Teigen v. Comm'r, Soc. Sec. Admin.,* 677 F. App'x 519, 522 (11th Cir. 2017) (rejecting claimant's argument that he met a listed impairment). To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3); *Wilson v. Barnhart,* 284 F.3d 1219, 1224 (11th Cir. 2002). An impairment that meets only some of the Listing requirements, no matter how severe, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Prince v. Comm'r, Soc. Sec. Admin.,* 551 F. App'x 967, 969 (11th Cir. 2014). Here, Plaintiff failed to demonstrate how she met Listing 2.10. Although Plaintiff was diagnosed with severe sensorineural hearing loss, a diagnosis alone is insufficient to establish the severity of an impairment or any resulting work-related limitations. *Wood v. Astrue*, No. 8:10-CV-2373-T-

---

ALJ's ultimate determination"); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error doctrine in Social Security appeal after finding that administrative law judge made "erroneous statements of fact").

17AEP, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore*, 405 F.3d at 1213), *report and recommendation adopted*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834132 (M.D. Fla. Mar. 13, 2012).  Indeed, the mere existence of an impairment does not reveal the extent to which the impairment may limit or affect a claimant's ability to work.  *Moore*, 405 F.3d at 1208 n.6. Plaintiff's unsupported assertions and suppositions, without medical support, are insufficient to meet her burden of establishing that her hearing impairment met the requirements of Listing 2.10.

Lastly, on November 2016 and January 2017, a State Agency audiology consultant reviewed the evidence of Plaintiff's hearing impairment, including the 2013 audiogram and the State Agency reviewers' opinions at the initial (R. 78-88, 91-102) and reconsideration levels (R. 104-17, 118-32), and opined that Plaintiff's hearing loss did not meet Listing 2.10.  The audiologist opined that Plaintiff:

> Does not meet 2.10 A or B listing for impaired hearing based on 1/12/12 hearing aid specialist with pure tone air conduction averages for .5, 1, 2 kHz at 67 dB HL for the right and 58 dB HL for the left with fair word recognition scores bilaterally. Better bone conduction average for 512 Hz was 58 dB HL.  10/19/16 Psychologist indicated claimant seemed to understand throughout the interview.  No problems hearing were reported in the face-to-face interview.

(R. 307) (Jan. 2017 Evaluation of Hearing Impairment); *see also* (R. 324) (Nov. 2016 Evaluation of Hearing Impairment, adding that "10/19/16 Psychologist indicated claimant seemed to understand throughout the interview.").

Against this factual and legal background, the undesigned finds that substantial evidence supports the ALJ's determination that Plaintiff's hearing impairment did not meet Listing 2.10 and the ALJ applied the proper legal standards.

## VI.   RECOMMENDATION

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 27) be **DENIED**,  Defendant's Motion for Summary Judgment (ECF No. 28) be **GRANTED**, and the ALJ's Decision be **AFFIRMED**.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida on February 6, 2021.


ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Beth Bloom
      All Counsel of Record

28